Argued February 23, affirmed in part, reversed in part March 21, petition for rehearing denied April 18, 1956

# GOWER *v.* STATE TAX COMMISSION and UNITED STATES OF AMERICA

295 P. 2d 162
296 P. 2d 239

*Omar W. Halvorson,* of Salem, argued the cause for defendants and appellants. With him on the brief were Robert Y. Thornton, Attorney General, and Carlisle B. Roberts, Assistant Attorney General, of Salem.

*George H. Layman,* of Newberg, argued the cause for plaintiff-respondent and cross-appellant. With him on the brief was Ernest J. Burrows.

*Harry Marselli,* of Washington, D.C., argued the cause for respondents. H. Brian Holland, Assistant Attorney General, and Ellis N. Slack, H. P. Locke, and Louise Foster, Special Assistants to the Attorney General, filed briefs for respondents.

Before WARNER, Chief Justice, ROSSMAN, LUSK, BRAND, LATOURETTE and PERRY, Justices.

## LATOURETTE, J.

The question posed is the relative priority of statutory federal and state tax liens and a mechanic's lien. The trial court found in favor of the United States of America. The State Tax Commission of Oregon and William J. Gower, the mechanic's lien claimant, appeal.

Plaintiff, William J. Gower, filed his complaint in the Washington county circuit court to foreclose an alleged plumber's lien which he had theretofore and on March 10, 1952, filed against certain real property owned by Leo Elwert and Mary Elwert, his wife.

The State Tax Commission intervened claiming priority over the federal government by virtue of certain income tax warrants which were issued against Elwert and his wife and which were docketed in the

Judgment Docket in the county clerk's office of Washington county on March 26, 1952, creating a judgment lien in its favor against the real property in question, pursuant to § 110.1623, OCLA, now ORS 315.630 and 315.635.

The United States also intervened claiming a priority for income taxes owing by the Elwerts by virtue of its filing with the Collector of Internal Revenue on April 25, 1952, the assessment list for taxes owing the federal government by Elwert and wife.

■ The first question to be resolved is the relative priority of the federal tax lien and the plaintiff's lien. On the authority of *United States v. Acri,* 348 US 211, 75 S Ct 239, 99 L ed 264, *U.S. v. Liverpool & London Ins. Co.,* 348 US 215, 75 S Ct 247, 99 L ed 268, *United States v. Scovil,* 348 US 218, 75 S Ct 244, 99 L ed 271, and *United States v. Colotta,* 350 US 808, plaintiff's lien is subservient to the tax liens of the United States government. The rationale of the above decisions is that a lien such as an attachment, mechanic's or landlord's lien, not having been reduced to judgment, is inchoate in that the fact and the amount of the lien are dependent upon the vicissitudes of litigation, and therefore, by federal reasoning, it is not, in reality, a lien at all.

The second question before us concerns the standing of the state's lien with reference to the federal tax lien.

■ Pursuant to statutory authority there were issued by the State Tax Commission and docketed in the office of the county clerk in the Judgment Docket of Washington county on March 26, 1952, certain tax warrants against Elwert and his wife for unpaid state income taxes. Under the Oregon law such docketing

had the force and effect of a judgment on which execution might issue. See *Ryals et ux. v. Smith et al.,* 202 Or 470, 275 P2d 853.

It is the position of the federal government that under the decisions of the Supreme Court of the United States and particularly the case of *United States v. Gilbert Associates,* 345 US 361, 73 S Ct 702, 97 L ed 1041, such a judgment did not confer upon the state the status of a judgment creditor under Int Rev Code, Title 26, § 3672, which reads:

> "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—* * *."

It is true that the Gilbert case stands for the proposition that so far as the federal government is concerned, a state does not occupy a judgment creditor's status by virtue of its tax foreclosure proceedings such as we have in this case so as to give it priority over the federal government under § 3672. However, a close analysis of that case will reveal that the turning point there was that the taxpayer was insolvent, and for that reason, the United States was given priority over the town of Walpole's ad valorem tax by virtue of § 3466 Rev Stat (Int Rev Code, Title 31, § 191). The court said:

> "* * * Where the lien of the Town and that of the Federal Government are both general, and the taxpayer is insolvent, § 3466 clearly awards priority to the United States."

In our opinion, the paramount question in this case is not whether the state tax lien occupies the position of a conventional judgment so as to give it priority over the federal government's lien pursuant to § 3672, but whether or not the federal statutes give

priority to the federal government under the circumstances of this case.

In determining the status of the federal government's lien against the land in question for delinquent taxes, two questions must be resolved. The first question concerns the effect of Int Rev Code, Title 26, § 3670 and § 3671. These sections create the lien which the United States asserts is prior to the State of Oregon's lien in this case. Section 3670 provides as follows:

> "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 3671 provides the effective date of the lien:

> "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."

The conclusion could be reached that the lien of the United States is to operate prospectively from April 25, 1952, the date that the assessment list was received by the collector. If the lien of the United States operates only prospectively, and if the lien of the state of Oregon, filed on March 26, 1952, sufficiently matured to reach a choate status under federal law by April 25, 1952, then the state's lien should be prior and prevail. An examination of the cases which have interpreted § 3670 and § 3671 is necessary to verify this conclusion.

■ Because of certain language in *US v. Security Trust & Savings Bank,* 340 US 47, 71 S Ct 111, 95 L ed 53 (1950), § 3466 and the cases applying this section must also be considered in any discussion of § 3670 and § 3671. Section 3466 says:

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3466 is a general statement of federal supremacy in any situation involving an insolvent debtor and competing creditors, including the United States. This statute says nothing about the status of the other creditors' claims; they may be liquidated or unliquidated, specific or general, secured or unsecured. The statute only requires that the debtor be insolvent, and that he owe a debt to the United States. This statute is an old statute, existing as early as 1790 (Act of 1790, ch 35, § 45). Judicially construed in *Thelusson et al. v. Smith,* 15 US 396, 4 L ed 271 (1817), the statute has been applied without variation. The fact that one of the creditors competing for the assets of the insolvent is a state, or a subdivision thereof, and that the state claims a lien against the asset has not prevented the United States Supreme Court from reaching the same result in every case; if the debtor is insolvent, the United States must first be satisfied out

of the assets remaining in his estate, and then the other creditors may come in according to their common law and statutory priority. See *County of Spokane, Washington v. U. S.*, 279 US 80 (1929), 49 S Ct 321, 73 L ed 621, *New York v. Maclay et al.*, 288 US 290 (1932), 53 S Ct 323, 77 L ed 754, *U. S. v. Texas et al.*, 314 US 480 (1941), 62 S Ct 350, 86 L ed 356, *U. S. v. Waddill Co. et al.*, 323 US 353 (1944), 65 S Ct 304, 89 L ed 294, *Illinois v. Campbell*, 329 US 362 (1946), 67 S Ct 340, 91 L ed 348. In each of these cases the United States and a state or its subdivision were competing for the assets of an insolvent debtor. In each case the United States prevailed because of the priority expressly conferred by § 3466.

Turning back to § 3670 and § 3671, the language of these sections of the Internal Revenue Code imports no overriding United States priority. It merely confers upon the United States a lien effective in time when the assessment list is received by the collector. There is no claim in this case that the taxpayers are insolvent. The federal government is proceeding under § 3670 and § 3671. In the case at bar the State Tax Commission's judgment was docketed in the Judgment Docket of the Washington county clerk's office on March 26, 1952, and the assessment list was not filed with the Collector of Internal Revenue until about a month later, to-wit, April 25, 1952.

Under the ruling in *U. S. v. New Britain*, 347 US 81 (1953), 74 S Ct 367, 98 L ed 520, the State of Oregon, being prior in time, should prevail. In that case, the city had certain estate taxes and water rental liens, some of which were prior to and some of which were subsequent to the liens of the federal government. The

taxpayer was solvent. Quoting from that decision, we read:

"Thus, the general statutory liens of the United States are as binding as the specific statutory liens of the City. The City gains no priority by the fact that its liens are specific while the United States' liens are general. Obviously, the State cannot on behalf of the City impair the standing of the federal liens, without the consent of Congress. Michigan v. United States, 217 U. S. 338, 340; United States v. Oklahoma, 261 U. S. 253, 260; United States v. Snyder, 149 U. S. 210, 214. On the other hand, the federal statutes do not attempt to give priority in all cases to liens created under the paramount authority of the United States. The statute creating the federal liens here involved, I. R. C., § 3670, does not in terms confer priority upon them."

"*    *    *    *    *

"It does not follow, however, that the City's liens must receive priority as a whole. We believe that priority of these statutory liens is determined by another principle of law, namely, 'the first in time is the first in right.'  *  *  *  This principle is widely accepted and applied, in the absence of legislation to the contrary.  *  *  *  We think that Congress had this cardinal rule in mind when it enacted § 3670, a schedule of priority not being set forth therein. Thus, the priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate."

■ The New Britain case suggests the other question which apparently must be resolved before the State of Oregon can prevail. This decision requires that the lien asserted to be prior in time to the United States' lien also be choate. To determine the requirements of choateness, one must look back to the decisions which apply § 3466, the insolvency statute. These decisions,

above cited, have seized upon certain language, first stated in *New York v. Maclay,* supra, to the effect that a specific and a definite lien, which divests the debtor of either possession or title of the asset subject to the lien, might exempt the asset from the priority conferred by § 3466. The Supreme Court even defined the requirements of a lien which would take the asset out of the insolvent debtor's estate and out of the reach of § 3466. In *Illinois v. Campbell,* supra, at page 375, the court said:

> "The long established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor * * * (2) the amount of the lien * * * (3) the property to which it attaches * * *. It is not enough that the lienor has power to bring these elements or any of them, down from broad generality to the earth of specific identity."

■ The justification for importing into the provisions of § 3670 and § 3671 the requirement of choateness is not clear. There is no indication in the statute that Congress intended to distinguish between different classes of lien claimants when it conferred upon the United States a lien for delinquent incomes taxes as well as an action for them. Any lien recognized by state law, prior in time to the federal lien, should prevail over the federal lien created by § 3670 when the taxpayer is solvent, and the only dispute is who will be first satisfied out of a particular asset claimed by both the creditor and the United States.

■■ The state's liens are in a sense more choate than the federal government's liens because execution may issue on the state's lien against the property of the

taxpayer, whereas, before the government may realize on its lien, action must be brought under Int Rev Code, Title 26, § 3678. They are both choate in the sense that the parties, the amount of the lien, and the property involved are identified. See *Illinois v. Campbell,* supra. Since the state's lien is "first in time," and also meets the requirements of choateness laid down in *Illinois v. Campbell,* supra, it should, according to the New Britain case, be "first in right."

We hold that the state tax lien takes precedence over the federal government's lien. No costs will be allowed to any party.

Affirmed in part and reversed in part.

**ON REHEARING**

On Petition for Rehearing

George H. Layman, Newberg, and Ernest J. Burrows, Portland, for plaintiff-respondent and cross-appellant.

Before WARNER, Chief Justice, and ROSSMAN, LUSK, BRAND, LATOURETTE and PERRY, Justices.

ROSSMAN, J.

■ The plaintiff, who was cross-appellant, has submitted a petition for a rehearing in which he requests us to give further consideration to the priority issue determined in our former opinion and to make a specific finding as to priority between his mechanic's lien and the state's tax lien.

The question as to priority between the mechanic's lien and the state's tax lien was not before us when we wrote our former opinion. In his complaint petitioner had prayed for a decree adjudging his lien to be prior to those of the state tax commission and the federal government. The defendant state tax commission answered as follows:

"Wherefore, defendants * * * join with plaintiff in his prayer that the property * * * be sold upon foreclosure and that the proceeds of such sale be first applied in satisfaction of plaintiff's lien, costs and disbursements * * *."

On argument before this court, counsel for petitioner, when asked what were the issues between petitioner and the tax commission, stated:

> "We're completely in accord. The state concedes that we have priority over them and we both take the position that our liens are prior to the government lien."

The decree of the circuit court adjudged that petitioner's lien was subsequent to that of the federal government and prior to that of the tax commission. Petitioner's priority over the tax commission was not submitted to us on appeal. Therefore, the effect of our decision, holding the lien of the state tax commission to be prior to that of the federal government, left undisturbed the priority between the commission and the petitioner.

In our former opinion we relied on *United States v. Acri,* 348 US 211, 75 S Ct 239, 99 L ed 264; *United States v. Liverpool & London Ins. Co.,* 348 US 215, 75 S Ct 247, 99 L ed 268; *United States v. Scovil,* 348 US 218, 75 S Ct 244, 99 L ed 271; and *United States v. Colotta,* 350 US 808, for our holding that petitioner's lien is subordinate to that of the federal government. Only the Colotta case involved a mechanic's lien; its decision was manifested by a memorandum opinion which granted certiorari and reversed the Mississippi court's holding in favor of the priority of the mechanic's lien. See, to like effect, *United States v. White Bear Brewing Co., Inc.,* 76 S. Ct. 646. Petitioner stresses *United States v. Griffin-Moore Lumber Co.,* 62 So2d 589, and *United States v. Holman Lumber Co.,* 206 F2d 685, which involved fact situations substantially the same as the one at bar and which granted priority to the mechanic's liens. Those cases were not appealed to the Supreme Court. In arriving at our

former opinion we did not follow those decisions because the general language employed by the Supreme Court in the cases cited above seemed to control the case at bar. In the Acri case, which involved an attachment lien, the court said that the lien, so far as federal tax purposes were concerned, was "an inchoate lien because, at the time the attachment issued, the fact and the amount of the lien were contingent upon the outcome of the suit for damages." Similarly, in the instant case, when the petitioner filed his lien notice, the fact and the amount of the lien were contingent upon the outcome of a suit for foreclosure. See *Illinois v. Campbell*, 329 US 362, 67 S Ct 340, 91 L ed 348.

We applied the reasoning in *United States v. New Britain*, 347 US 81, 74 S Ct 367, 98 L ed 520, in support of our conclusion that the tax commission had priority over the federal government, and we believe that that case represents the limit of validity which a lien, instituted prior in time to the federal lien, will be given in the present state of the law. There, the Supreme Court pointed out that the liens asserted by the city required nothing more to be done in regard to any of them to make them choate; that is, to have the force of a judgment, against the specific property. In the case at bar, the petitioner's lien remained something less than analogous to a judgment prior to foreclosure.

Finally, in view of the issues between the parties and the issue presented to us, our former opinion could have had no adverse effect on petitioner's interests.

The petition is denied.