Argued October 11, reversed December 11, 1968, petition for rehearing denied February 11, 1969

BANK OF LEBANON, *Plaintiff, v.* J & W
LUMBER CO., *Defendant,*
STATE COMPENSATION DEPARTMENT
ET AL, *Respondents,* UNITED STATES
OF AMERICA, *Appellant.*

---

NICE ELECTRIC CO., *Plaintiff, v.* J & W
LUMBER CO., *Defendant,*
STATE COMPENSATION DEPARTMENT
ET AL, *Respondents,* UNITED STATES
OF AMERICA, *Appellant.*

---

STATE COMPENSATION DEPARTMENT,
*Respondent, v.* J & W LUMBER CO.,
*Defendant,*
PEET, *Respondent,* UNITED STATES OF
AMERICA, *Appellant.*

**448 P. 2d 367**

*Edward Lee Rogers,* Washington, D. C., argued the cause for appellant. With him on the briefs were Mitchell Rogovin, Assistant Attorney General, Lee A. Jackson and Karl Schmeidler, Washington, D. C., and Sidney I. Lezak, United States Attorney, Portland.

*Cliff A. Allison,* Assistant Attorney General, Salem, argued the cause for respondent State Compensation Department. With him on the brief were Robert Y. Thornton, Attorney General, and Wallace Carpenter, Assistant Attorney General, Salem, and E. Nordyke and Murley M. Larimer, Assistant Attorneys General, Salem, for respondent, Department of Employment.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

SLOAN, J.

Plaintiff, Bank of Lebanon, started this suit to foreclose a mortgage on property owned by defendant J & W Lumber Co. Other lienholders were named as party defendants including the State Compensation Department, the Commissioner of the Department of Employment and the United States. The mortgage has long since been foreclosed and the property sold. What remains is a contest between the state agencies just named and the United States as to the priority of liens of the state agencies versus tax liens of the United States. There are excess proceeds from the sale of personal property remaining after the satisfaction of the mortgage to satisfy only one of these lien-claimants. The trial court awarded priority to the state agencies. The United States appeals.

The state liens and their enforcement are, of course, the product of state statutes.[1] The federal lien is for unpaid federal taxes and is governed by federal statutes.[2]

---

[1] The lien statute for the State Compensation Department, ORS 656.564, for example, provides for liens upon the real and personal property of a non-paying employer, ORS 656.564(3) provides for filing notice of the liens with the county clerk. Subsection (4) of that statute provides the method of enforcing the lien. It is the crucial part of the statute and reads:

"The department shall, within six months from the filing of the statement, commence a suit to cause such lien to be foreclosed in the manner provided by law for the foreclosure of other liens on real or personal property."

The state statutes in respect to the other disputed liens are substantially the same.

[2] 26 USCA § 6321. Lien for taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon

■ The competition between the federal and state liens in the instant case occurs because the state agencies filed lien notices, as required by the applicable statutes, prior to the date that the federal taxes were assessed. 26 USCA § 6322, set out in the margin, states that the lien dates from the date of assessment. However, the United States claims that the state liens did not become choate until a decree to enforce the lien had been entered as provided by the state statute. This is referred to as the doctrine of choateness. This is stated to mean that the date on which the applicable law permitted the lienholders to actually seize the liened property fixes the date of priority. *United States v. Security Trust & Sav.*, 1950, 340 US 47, 71 S Ct 111, 95 Led 53. The trial court held that the doctrine did not apply in this case. In this appeal,

all property and rights to property, whether real or personal, belonging to such person."

26 USCA § 6322. Period of Lien.

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made * * *."

26 USCA § 6331. Levy and distraint.

"(a) Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * *."

* * * * * *

"(b) Seizure and sale of property.—The term 'levy' as used in this title includes the power of distraint and seizure by any means. A levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary or his delegate may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

we understand the state to admit that the doctrine does apply but the state agencies claim their liens were perfected when the lien notices were filed and were enforceable without judicial process. We cannot agree.

■ "The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question. Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this court. * * *." *United States v. Security Trust & Sav., supra,* 340 US at 50, 71 S Ct at 113, 95 Led at 56. The decisions of the Supreme Court, therefore, control our decision.

■ It is not disputed that, by the federal statutes, the federal lien dates from the date of the assessment of the tax. And it is the rule that "* * * [t]he assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." This the administrators may do without any judicial or other preliminary procedure. *Bull v. United States,* 1935, 295 US 247, 260, 55 S Ct 695, 699, 79 Led 1421, 1427.

■ The United States relies on these and similar cases to claim priority because the state statutes do not permit the state agencies to actually seize the liened property until a decree foreclosing the liens has been entered and that the decree foreclosing the state liens in the instant case was not entered until after the date of the assessment of the federal taxes. The United States claims priority because it had the first right to seize the property and, therefore, the federal liens are first in time. We must agree. We read the

above-cited cases, as well as *United States v. Vermont,* 1964, 377 US 351, 84 S Ct 1267, 12 Led2d 370, to hold that unless the state liens, when they were first filed, afforded the same right of administrative seizure as permitted by the federal statutes or unless the state lien notices provided the equivalent of a judgment lien, then the federal liens are prior.

There is some confusion in the Supreme Court opinions in deciding some of these cases but we are convinced that clarity of the determination of priority will be better achieved if we adhere to the following statement in *United States v. Vermont, supra,* 377 US at 358, 359, 84 S Ct 1271, 1272, 12 Led2d 375, 376:

> "* * * Moreover, unlike those cases in which the Security Trust [*United States v. Security Trust and Savings Bank,* supra, 340 US 47] rationale was applied to subordinate liens on the ground that judgment had not been obtained prior to the time the federal lien arose,* it is as true of Vermont's lien here* as it was of the federal lien in New Britain [*United States v. New Britain,* 1954, 347 US 81, 74 S Ct 367, 98 Led 520] that 'The [Vermont] assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.' Bull v. United States, 295 US 247, 260." (*Footnotes omitted).

The Oregon statutes do not permit an administrative seizure of the property described in the lien notices nor does the notice of lien create the equivalent of a judgment lien. The state statutes require the further procedure specified in the statutes of a foreclosure proceeding before the property may be actually seized. The state liens simply do not afford the same right to seize the liened property that is granted to the federal tax collectors. For that reason we decide

that the federal liens at issue here are prior in time to the state liens.

The state also relies on *Gower v. State Tax Commission*, 1956, 207 Or 288, 295 P2d 162, 296 P2d 239, where, on similar chronological facts, it was held that state liens created to collect unpaid income taxes were prior in time to federal tax liens. In *Gower* the state statute was § 110-1623 OCLA, which provided that the State Tax Commission could issue a warrant for the recovery of unpaid income taxes and that such warrant would be docketed in the appropriate county judgment docket records and would thereafter have the effect of a judgment lien. The difference between § 110-1623 OCLA and the statutes involved in the instant case provide a clear distinction between the *Gower* case and the instant case.

The decree must be reversed and a decree entered in keeping with this opinion.